UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAQUASIA WRIGHT, ERIKA THOMAS, and CHERIE POOLE, on behalf of themselves, individually, and on behalf of all others similarly-situated,<br><br>       Plaintiffs,<br><br> -against-<br><br>SKYWEST AIRLINES, INC.,<br><br>       Defendant. | **COMPLAINT**<br><br>Docket No.: 22-cv-914<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS AND COLLECTIVE ACTION** |

Plaintiffs DAQUASIA WRIGHT, ERIKA THOMAS, and CHERIE POOLE (collectively, "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated, ("FLSA Plaintiffs" and/or "Rule 23 Plaintiffs"), by and through their attorneys, JOSEPH & NORINSBERG, LLC, as and for their Complaint against SKYWEST AIRLINES, INC., ("Defendant"), alleges upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

1. Plaintiffs bring this action on behalf of themselves and all others similarly situated for Defendant's systemic and continuous violations of: (i) the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a); (ii) the overtime provisions of the FLSA, 29 U.S.C. § 207(a); (iii) the NYLL's requirement that employers pay manual worker employees all wages owed on a weekly basis, NYLL § 191(1)(a); (iv) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL §195(3), as codified in the New York Wage Theft Prevention Act ("WTPA"); and (v) any other claim(s) that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.      Defendant owns and operates an airline that provides transportation services to passengers throughout the United States.

3.      Plaintiffs are three of Defendant's current employees, working for Defendant as flight attendants.

4.      Before Plaintiffs were permitted to perform any duties or responsibilities related to any of Defendant's transportation activities, as newly hired flight attendants ("Trainees") Defendant required them to undergo a rigorous thirty-day training program. This training program forced Plaintiffs to work over 350 hours, while only permitting them two days off, and while only paying them approximately 64 hours *total*.

5.      For their work, while Defendant purported to pay them at an hourly rate of $18.13, in reality, Defendant paid them an effective hourly rate averaging little more than $3.00 per hour.

6.      As a result, Defendant failed and refused to pay Plaintiffs and all of Defendant's Trainees minimum wages and overtime compensation, in willful violation of the FLSA.

7.      Defendant paid and treated all of its flight attendant Trainees in the same manner by uniformly refusing to pay them wages that amounted to at least the federal minimum wage rate, and by failing to pay them *any* overtime compensation - - neither at one and one-half times their purported regular rates of pay, nor one and one-half times the federal minimum wage rate - - throughout their training period, despite their hours exceeded forty each week.

8.      Plaintiffs Wright and Thomas therefore bring this lawsuit against Defendant pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable

FLSA limitations period who suffered damages as a result of the Defendant's willful violations of the FLSA.

9.      Defendant also has flagrantly violated, and continues to violate the NYLL, with respect to Plaintiffs Wright and Poole. Specifically, Plaintiffs Wright and Poole worked for Defendant in New York as reserve flight attendants.

10.     Despite well more than 25% of Plaintiffs Wright and Poole's job duties requiring them to perform manually laborious, physical tasks, Defendant failed and refused to pay Plaintiffs their earned and owed wages on a weekly basis. Instead, Defendant paid them twice per month, in violation of NYLL § 191(1)(a). In so doing, Defendant provided them with legally inaccurate wage statements that incorrectly listed their pay date as less frequently than weekly, while also failing to include, *inter alia*, their actual hours worked.

11.     Plaintiffs Wright and Poole also bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable NYLL limitations period who suffered damages as a result of the Defendant's uniform and systemic violations of the NYLL and the WTPA.

## JURISDICTION AND VENUE

12.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

13.     The Court has original jurisdiction over the New York state claims in this action pursuant to the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000.00 exclusive of interest and costs.

14.     The members of the proposed class are citizens of states different from that of Defendant.

15.     There are over 100 members in the proposed class.

16.     Defendant is subject to personal jurisdiction in New York, as Defendant operates its airline within New York, with LaGuardia Airport functioning as one of Defendant's many hubs.

17.     In the alternative, the supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising out of New York law.

18.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(2), and as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## PARTIES

### *Plaintiffs*

19.     Plaintiffs Daquasia Wright ("Wright"), Erika Thomas ("Thomas"), and Cherie Poole ("Poole") work and worked for Defendant in the United States and are and were "employees" entitled to the protections as defined in the FLSA.

20.     Moreover, Plaintiffs Wright and Poole worked for Defendant in New York and are and were "employees" entitled to the protections as defined in the NYLL and WTPA.

### *Defendant*

21.     Defendant SkyWest Airlines, Inc. ("Defendant"), was and is a foreign corporation with its principal place of business located at 444 South River Road, St. George, Utah, 084790.

22.     Defendant is an airline servicing flights for United Airlines, Delta Air Lines, American Airlines, and Alaska Airlines. Defendant operates a fleet of over 480 aircraft, traveling to 250 destinations throughout North America.

23.     At all times relevant to this action, Defendant employs and employed two or more employees, and was and is an enterprise "engaged in interstate commerce," as defined by the FLSA, because it operates an airline providing transportation activities for passengers throughout the United States, and Defendant's qualifying annual business exceeds $500,000.00.   That combination subjects Defendant to the FLSA's minimum wage and overtime requirements as an enterprise. In addition, Plaintiffs all performed work as flight attendants, traveling across state lines to perform their work, subjecting Defendant to the FLSA's minimum wage and overtime requirements as individuals.

24.     Accordingly, Defendant was and is the "employer(s)" of Plaintiffs within the meaning of the FLSA, NYLL, and WTPA.

## COLLECTIVE ACTION ALLEGATIONS

25.     Plaintiffs Wright and Thomas seek to bring this suit to recover from Defendant unpaid minimum wages, overtime compensation, and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on their own behalf, as well as on behalf of those in the following collective:

> Current and former flight attendants, who during the applicable FLSA limitations period, underwent Defendant's training program for new hires, and who consent to file a claim to recover damages for: (1) unpaid minimum wages that is legally due to them; and/or (2) overtime compensation that is legally due to them; and/or (3) liquidated damages that are legally due to them ("FLSA Plaintiffs").

26.     Defendant treated Plaintiffs and all FLSA Plaintiffs similarly, in that Plaintiffs Wright and Thomas and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below, during their training period; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were paid below the federal

minimum wage rate of $7.25 per hour for all hours worked each week during their training period; (5) required to work in excess of forty hours in a workweek during their training period; and (6) were not paid the required one and one-half times their respective regular rates of pay, or the minimum wage, if greater, for all hours worked per workweek during their training period in excess of forty.

27.     At all relevant times, Defendant is and has been aware of the requirements to pay Plaintiffs Wright and Thomas and all FLSA Plaintiffs at an amount equal to or greater than the federal minimum wage rate, and at the rate of one and one-half times their respective regular rates of pay, or one and one-half the minimum wage rate, if greater, for all hours worked each workweek above forty, yet it purposefully and willfully chose and chooses not to do so during Plaintiffs Wright and Thomas and all FLSA Plaintiffs' training periods.

28.     Defendant's willful violation of the FLSA is evidenced by its knowledge that its policies violated the FLSA, and its intentional and/or reckless choice to continue to operate in violation of the FLSA's requirements. Discovery will reveal evidence that Defendant blatantly ignored the FLSA's explicit requirement that employees must be paid for *all* hours suffered or permitted to be worked and that underpaying its workers for their training time is an illegal practice.

29.     The precise number of FLSA Plaintiffs should be readily available from a review of the Defendant's personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

30.     Thus, all FLSA Plaintiffs are victims of Defendant's pervasive practice of willfully refusing to pay their employees at least at the federal minimum wage rate during their training

periods, and overtime compensation for all hours worked per workweek above forty during their training periods, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

31.     In addition, Plaintiffs Wright and Poole seek to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on their own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, were subjected to violations of the NYLL and the NYCCRR.

32.     Plaintiffs Wright and Poole seeks certification of the following FRCP 23 class:

> Current and former reserve flight attendants who were based in a New York "hub" and who performed any work for Defendant during the statutory period within the State of New York ("Rule 23 Plaintiffs").

33.     All of the requirements under FRCP(b)(3) are satisfied, as set forth below.

34.     Moreover, Plaintiffs and the Rule 23 Plaintiffs have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct. For instance, Plaintiffs and the Rule 23 Plaintiffs have suffered a concrete injury in fact and as a result have been actually harmed by Defendant's late payments of wages. Specifically, Plaintiffs and the Rule 23 Plaintiffs were deprived of their ability to purchase with their timely wages, invest their timely wages, accrue interest on their timely wages, or otherwise utilize the value that their wages would have held had they been paid timely.

### Numerosity & Ascertainability

35.     During the applicable NYLL limitations period, the Defendant has, in total, employed at least 100 employees that are putative members of this class.

7

36.     The precise number of the Rule 23 Plaintiffs is readily ascertainable through a review of Defendant's personnel, time, and payroll records.

## Common Questions of Law and/or Fact

37.     There are questions of law and fact common to each Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that the Defendant required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff; (3) whether the Defendant compensated Rule 23 Plaintiffs less frequently than on a weekly basis; (4) whether the Defendant furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by N.Y. Lab. Law § 195(3); (5) whether the Defendant kept and maintained accurate records of hours worked by Rule 23 Plaintiffs; (6) whether the Defendant kept and maintained records with respect to the compensation that it paid to the Rule 23 Plaintiffs for each hour worked; (7) whether the Defendant has any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (8) whether the Defendant's actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and WTPA; and (9) if so, what constitutes the proper measure of damages.

## Typicality of Claims and/or Defenses

38.     As described in the "Background Facts" section below, the Defendant employed Plaintiffs Wright and Poole and Rule 23 Plaintiffs within the meaning of the NYLL.  Plaintiffs Wright and Poole's claims are typical of the claims of the Rule 23 Plaintiffs whom they seek to represent, as the Rule 23 Plaintiffs: work and/or have worked for Defendant as reserve flight attendants in New York; Defendant failed to pay them at least as frequently as a weekly basis despite their status as manual workers; and Defendant did not provide them with accurate wage

statements on each pay day. Plaintiffs Wright and Poole and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL to be paid as manual workers at least as frequently as on a weekly basis, and to be furnished with accurate wage statements on each payday.

39.     Plaintiffs Wright and Poole and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of the Defendant's failure to comply with the NYLL and WTPA. Plaintiffs Wright and Poole and the Rule 23 Plaintiffs all have suffered injury including lack of compensation and/or untimely compensation due to the Defendant's common policies, practices, and patterns of conduct. Thus, Plaintiffs Wright and Poole's claims and/or Defendant's defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendant's defenses to those claims.

## Adequacy

40.     Plaintiffs Wright and Poole, as described below, worked the same or similar job duties as reserve flight attendants as the Rule 23 Plaintiffs throughout their employment with Defendant. Defendant did not pay Plaintiffs on a weekly basis, and did not furnish Plaintiffs with accurate wage statements on each payday, which is substantially similar to how Defendant paid and treated the Rule 23 Plaintiffs.

41.     Plaintiffs Wright and Poole fully anticipate providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendant's Answer. Thus, Plaintiffs Wright and Poole would properly and adequately represent the current and former employees whom Defendant has subjected to the treatment alleged herein.

42.     Additionally, Plaintiffs' counsel, Joseph & Norinsberg, LLC ("J&N"), has substantial experience in the field of employment law. J&N is a well-respected litigation firm that represents Plaintiffs primarily in a wide variety of employment matters, including individual and

class action litigation concerning wage and hour, discrimination, and harassment claims among others. J&N is dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at a significant cost to the firm in terms of time, resources, and financial risk. Plaintiffs' counsel has handled hundreds of employment cases in federal districts courts, including dozens of Rule 23 class actions and FLSA collective actions.  Accordingly, Plaintiffs' counsel will fairly and adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

### Superiority

43.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiffs Wright and Poole know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

44.     Plaintiffs Wright and Poole have no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, the Defendant treated Plaintiffs Wright and Poole identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

45.     Any lawsuit brought by a reserve flight attendant based in New York and employed by Defendant would be identical to a suit brought by any other such employee for the same violations.  Thus, separate litigation would risk inconsistent results.

46.     Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## BACKGROUND FACTS

### *Allegations Common to All Claims and Plaintiffs*

47.     Defendant is a Utah-based airline that operates passenger flights in the United States.

48.     Defendant employs flight attendants in various "hubs" located throughout the United States.

49.     One such hub was located in New York's LaGuardia Airport.

50.     Regardless of where any given flight attendant's "hub" is designated, all of Defendant's new hire flight attendants ("Trainees") must undergo a rigorous thirty-day training program before they are permitted to step foot in an airplane, or to perform any work relating to any transportation activities that Defendant offers to the public via.

51.     Indeed, Defendant is subject to the Federal Aviation Regulations ("FAR"), which prohibits Trainees from performing any work on any airplanes relating to passenger travel unless and until such Trainee completes minimum training requirements to become certified for air travel.

52.     All of Defendant's Trainees complete their training a Defendant's training facility in Salt Lake City, Utah.

53.     None of the training time for any Trainee is performed on an airplane.

54.    All of the training time is either performed in a classroom, in a computer lab, or in a large warehouse akin to an airplane hangar.

55.    For the training completed in the warehouse, Defendant's flight attendants perform various drills, hands-on practice, and/or simulations in (or on) a large simulator. The simulator is shaped like an airplane and resembles an airplane both in its interior and exterior, yet it is an immobile structure incapable of flight.

56.    Defendant requires its Trainees to perform thirty days of training before they can be cleared to take part in an "In-flight Operation Experience" ("IOE"). Unlike the thirty-day training, the IOE occurs during an actual flight in an actual airplane.

57.    During the IOE, a flight attendant trainee shadows a certified flight attendant to experience the rigors of performing work on an actual flight.

58.    Before obtaining approval from Defendant to perform an IOE, all trainees must complete a series of weekly exams plus a final written exam.

59.    Trainees must achieve a minimum passing grade of 80% on all weekly exams, complete all coursework, and pass Defendant's final written exam before they are cleared to perform any work during any air travel operated by Defendant.

60.    If any Trainee fails to complete Defendant's training course, Defendant will not permit her to board a plane or perform any work related to any of Defendant's transportation activities.

61.    The daily hours during Defendant's thirty-day flight attendant training course vary. However, each training day consists of a minimum of eight-hours of in-person work, plus several hours of homework assignments / coursework that Defendant requires all Trainees to complete before the subsequent day's in-person training.

62.     Defendant only provides its Trainees one-to-three 24-hour rest periods to be free from training. The entire remainder of the 30-day training period is working time.

63.     Each training day's in-person work begins anywhere from 5:00 a.m. to 8:00 a.m.

64.     Each training day's in-person work concludes between 3:00 p.m. and 6:00 p.m.

65.     All of Defendant's Trainees are paid at the hourly rate of $18.13.

66.     Despite performing a minimum of 224 hours, and upwards of 364 hours, of work throughout the entire training period, Defendant only pays its Trainees approximately 66 hours *for the entirety of their training.*

67.     As a result, at most, Defendant only pays its Trainees an estimated total of $1,208.18 for a minimum of 224 hours of work. This equates to an average hourly rate of **$5.39** for the entire month.

68.     Moreover, despite Defendant prohibiting its Trainees from performing any travel-related work while grounded during their training time, and despite all Trainees working between 48 and 56 hours of in-person training time per week, plus additional after-hours homework/coursework as part of their training, Defendant fails and refuses to provide any overtime compensation of one and one-half times the Trainees' regular rates of $18.13 per hour, which amounts to $27.20 per hour.

69.     Regardless of their position, "hub," or status as a Trainee or certified flight attendant, all of Defendant's flight attendants are paid on a semi-monthly basis.

70.     Once they complete Defendant's training program and become certified to perform work in support of Defendant's air transportation activities, virtually all of Defendant's flight attendant job duties - - and indeed, more than 25% of their actual working time - - is spent performing manually laborious / physical tasks. These include but are not limited to: serving

passengers with the beverage cart; collecting garbage; physically carrying items of various sizes for customers; assisting customers with their carry-on baggage; preparing for takeoff and landing; and standing for long periods of time, among other manual tasks.

### *Daquasia Wright*

***Defendant Failed to Pay Plaintiff Wright Minimum Wages or Overtime Compensation under the FLSA for her Training Time.***

71.     Plaintiff Wright is currently a flight attendant employed by Defendant.

72.     Defendant hired Plaintiff Wright in or around late February 2019 as new flight attendant Trainee.

73.     At the time of her hire, Plaintiff Wright was not certified to perform any work relating to any of Defendant's transportation-related activities.

74.     As a result, Defendant required Plaintiff Wright to complete Defendant's training course in Salt Lake City, Utah.

75.     Plaintiff Wright worked for Defendant as a Trainee from on or around March 27, 2019 until on or around April 26, 2019 ("Training Month").

76.     Plaintiff worked Defendant's training program along with a class of approximately thirty Trainees.

77.     At the start of each new week during Plaintiff's Training Month, Defendant also began a new training with a new batch of approximately thirty Trainees.

78.     Plaintiff Wright and her fellow Trainees worked for twenty-eight out of the thirty-day Training Month.

79.     Each day that Plaintiff Wright performed work during her Training Month, Defendant required her and all other Trainees to attend in-person training, starting between 5:00 a.m. and 8:00 a.m., and continuing until between 3:00 p.m. and 6:00 p.m.

80.     Plaintiff Wright's job duties during her Training Month included but were not limited to: attending classroom training sessions; conducting fire safety drills; learning Defendant's "commands" to be carried out during a flight; learning how to perform CPR; practicing opening and closing emergency exit doors; training with an airline food and beverage service cart; inflating and using a mock emergency exit door slide to prepare for a simulated water landing; and completing various coursework and taking practice exams.

81.     In addition to Plaintiff Wright's in-person job duties, Defendant also required Plaintiff to perform after-hours coursework and homework assignments. Plaintiff Wright estimates that she spent between two and six hours each evening completing Defendant's mandatory after-hours coursework and homework.

82.     Throughout Plaintiff Wright's Training Month, neither she nor any of her fellow Trainees ever stepped foot on any of Defendant's actual airplanes used for Defendant's transportation-related activities.

83.     During her training period, Defendant purported to pay Plaintiff at the hourly rate of $18.13.

84.     However, despite working for twenty-eight days, including an estimated total of approximately 224 hours of in-person work, plus an additional 112 hours of after-hours coursework, for a combined total of 336 hours throughout her Training Month, Defendant only paid Plaintiff Wright for a total of 66.54 hours of work, amounting to total wages of $1,208.18.

85.     As a result, Defendant failed to pay Plaintiff Wright at least the federal minimum wage rate of $7.25 for all hours worked.

86.     In addition, Defendant never paid Plaintiff Wright one and one-half times her purported regular rate of pay of $27.20, nor even one and one-half times the minimum wage rate of $10.88, for any hours that she worked each week above forty.

87.     By way of example only, during the week of April 1st through April 7th, 2019, Plaintiff worked seven days, from between 6:00 a.m. and 8:00 a.m., through between 4:00 p.m. and 6:00 p.m. in-person, plus an additional two-to-four hours of after-hours coursework / homework assignments each day, for a total of approximately 91 hours of work that week.

88.     Yet Defendant only paid her for a total of 32.50 hours of work for the entire pay period from April 1st through April 15th, 2019, amounting to total wages of $589.22 for two weeks plus one day of work.

89.     As a result, Defendant only paid Plaintiff Wright approximately $274.97 for the 91 hours of work she performed during the week of April 1st through April 7th, 2019, which amounts to an hourly rate of $3.02.

90.     Defendant never paid Plaintiff Wright any wages, let alone any overtime compensation, for any of the hours she worked beyond during that week.

***Defendant Failed to Pay Plaintiff on a Weekly Basis as a New York Employee.***

91.     Plaintiff Wright graduated from Defendant's training program on April 26, 2019, after obtaining a passing grade on her final exam.

92.     Defendant first assigned Plaintiff Wright to Defendant's hub located in Salt Lake City, Utah, from May 2019 through August 2019.

93.     Thereafter, beginning on or around September 7, 2019, Defendant reassigned Plaintiff Wright to its LaGuardia hub, located in Queens, New York.

94.     Plaintiff Wright worked for Defendant in its New York LaGuardia hub from September 2019 until in or about April 2020.

95.     While working in New York, Defendant assigned Plaintiff Wright to the position of Reserve Flight Attendant

96.     As a Reserve Flight Attendant, Plaintiff Wright spent approximately 50% of her working time inside of New York's LaGuardia airport. She was not permitted to leave the airport during this time and was instead required to stand by at Defendant's employee lounge located within the airport.

97.     Defendant required Plaintiff Wright and all other reserve flight attendants in New York to be ready to fly at a moment's notice in the event of another in-service flight attendant's absence or unavailability.

98.     The other 50% of Plaintiff Wright's time was spent performing her routine job duties and responsibilities as a flight attendant, which consisted of the manual/physical tasks described above.

99.     The majority of the flights to which Defendant assigned Plaintiff Wright while working in New York involved her departure from and return to New York in the same day.

100.    Despite regularly spending more than twenty-five percent of her shift performing manually laborious / physical tasks, Defendant paid Plaintiff Wright on a semi-monthly basis.

101.    For example, for the period beginning on November 1, 2019 and ending November 15, 2019, Defendant paid Plaintiff Wright her lawfully earned wages on November 22, 2019.

102.    In this regard, Defendant failed to pay Plaintiff Wright her wages earned from November 1, 2019 to November 7, 2019 by November 14, 2019, as required by NYLL § 191(1)(a).

103.    As a result, Plaintiff Wright was not paid the wages she was due when it was due,

resulting in her actual concrete injury of underpayment of wages.

104.     Plaintiff Wright was similarly underpaid for every workweek that she was paid her lawfully earned wages after more than seven days within the time she completed her work.

105.     Moreover, Plaintiff Wright was denied the time-value of her money by Defendant's underpayments. Specifically, Plaintiff Wright suffered actual monetary injury in that she was unable to invest, save, or purchase utilizing the wages she earned at the time value it held when it was due.

106.     Moreover, on each occasion when Defendant paid Plaintiff Wright, Defendant provided Plaintiff Wright with an inaccurate wage statement, in that it failed to include, *inter alia*, her actual hours worked, or a correct weekly pay period.

### *Plaintiff Erika Thomas*

***Defendant Failed to Pay Plaintiff Thomas Federal Minimum Wages or Overtime for her Training.***

107.     Plaintiff Thomas is a current flight attendant working for Defendant in California.

108.     Plaintiff Thomas has worked for Defendant from in or around March 2019 through the present.

109.     Defendant has assigned Plaintiff Thomas to operate out of Defendant's San Francisco International Airport hub.

110.     Before starting her work at Defendant's San Francisco hub, however, Plaintiff Thomas was part of the same flight attendant training program class as Plaintiff Wright, in Salt Lake City, Utah.

111.     Plaintiff Thomas worked for Defendant as a Trainee from on or around March 27, 2019 until on or around April 26, 2019 ("Training Month").

112.    Plaintiff Thomas worked Defendant's training program along with a class of approximately thirty Trainees.

113.    At the start of each new week during Plaintiff Thomas's Training Month, Defendant also began a new training with a new batch of approximately thirty Trainees.

114.    Plaintiff Thomas and her fellow Trainees worked for twenty-eight out of the thirty-day Training Month.

115.    Each day that Plaintiff Thomas performed work during her Training Month, Defendant required her and all other Trainees to attend in-person training, starting between 5:00 a.m. and 8:00 a.m., and continuing until between 3:00 p.m. and 6:00 p.m.

116.    Plaintiff Thomas's job duties during her Training Month included but were not limited to: attending classroom training sessions; conducting fire safety drills; learning Defendant's "commands" to be carried out during a flight; learning how to perform CPR; practicing opening and closing emergency exit doors; training with an airline food and beverage service cart; inflating and using a mock emergency exit door slide to prepare for a simulated water landing; and completing various coursework and taking practice exams.

117.    In addition to Plaintiff Thomas's in-person job duties, Defendant also required Plaintiff to perform after-hours coursework and homework assignments. Plaintiff Thomas estimates that she spent between two and six hours each evening completing Defendant's mandatory after-hours coursework and homework.

118.    Throughout Plaintiff Thomas's Training Month, neither she nor any of her fellow Trainees ever stepped foot on any of Defendant's actual airplanes used for Defendant's transportation-related activities.

119.    During her training period, Defendant purported to pay Plaintiff at the hourly rate of $18.13.

120.    However, despite working for twenty-eight days, including an estimated total of approximately 224 hours of in-person work, plus an additional 112 hours of after-hours coursework, for a combined total of 336 hours throughout her Training Month, Defendant only paid Plaintiff Thomas for a total of 66.54 hours of work, amounting to total wages of $1,208.18.

121.    As a result, Defendant failed to pay Plaintiff Thomas at least the federal minimum wage rate of $7.25 for all hours worked.

122.    In addition, Defendant never paid Plaintiff Thomas one and one-half times her purported regular rate of pay of $27.20, nor even one and one-half times the minimum wage rate of $10.88, for any hours that she worked each week above forty.

123.    By way of example only, and similar to Plaintiff Wright, during the week of April 1st through April 7th, 2019, Plaintiff worked seven days, from between 6:00 a.m. and 8:00 a.m., through between 4:00 p.m. and 6:00 p.m. in-person, plus an addition two-to-four hours of after-hours coursework / homework assignments each day, for a total of approximately 91 hours of work that week.

124.    Yet just as Defendant did with Plaintiff Wright, Defendant only paid her for a total of 32.50 hours of work for the entire pay period from April 1st through April *15th*, 2019, amounting to total wages of $589.22 for two weeks plus one day of work.

125.    As a result, Defendant only paid Plaintiff Thomas approximately $274.97 for the 91 hours of work she performed during the week of April 1st through April 7th, 2019, which amounts to an hourly rate of $3.02.

126.    Defendant never paid Plaintiff Thomas any wages, let alone any overtime compensation, for any of the hours she worked beyond during that week.

***Plaintiff Cherie Poole***

***Defendant Failed to Provide Plaintiff Poole with Her Wages on a Weekly Basis.***

127.    Plaintiff Poole is a current flight attendant employee of Defendant.

128.    Plaintiff Poole has worked for Defendant since in or around July 2018 to the present.

129.    After completing her training program, Defendant certified Plaintiff Poole to work as a flight attendant.

130.    Defendants assigned Plaintiff Poole to its LaGuaradia Hub in New York from in or around October 2018 until in or around April 2020.

131.    While working for Defendant in New York, Plaintiff Poole was assigned to work as a Reserve Flight Attendant.

132.    As a Reserve Flight Attendant, Plaintiff Poole spent approximately 50% of her working time inside of New York's LaGuardia airport. She was not permitted to leave the airport during this time and was instead required to stand by at Defendant's employee lounge located within the airport.

133.    Defendant required Plaintiff Poole and all other reserve flight attendants in New York to be ready to fly at a moment's notice in the event of another in-service flight attendant's absence or unavailability.

134.    The other 50% of Plaintiff Poole's time was spent performing her routine job duties and responsibilities as a flight attendant, which consisted of the manual/physical tasks described above.

135.    The majority of the flights to which Defendant assigned Plaintiff Poole while working in New York involved her departure from and return to New York in the same day.

136.    Despite regularly spending more than twenty-five percent of her shift performing manually laborious / physical tasks, Defendant paid Plaintiff Poole on a semi-monthly basis.

137.    For example, for the period beginning on March 1, 2020 and ending March 15, 2020, Defendant paid Plaintiff Poole her lawfully earned wages on March 23, 2020.

138.    In this regard, Defendant failed to pay Plaintiff Poole her wages earned from March 1, 2020 to March 7, 2020 by March 14, 2020, as required by NYLL § 191(1)(a).

139.    As a result, Plaintiff Poole was not paid the wages she was due when it was due, resulting in her actual concrete injury of underpayment of wages.

140.    Plaintiff Poole was similarly underpaid for every workweek that she was paid her lawfully earned wages after more than seven days within the time she completed her work.

141.    Moreover, Plaintiff Poole was denied the time-value of her money by Defendant's underpayments. Specifically, Plaintiff Poole suffered actual monetary injury in that she was unable to invest, save, or purchase utilizing the wages she earned at the time value it held when it was due.

142.    Moreover, on each occasion when Defendant paid Plaintiff Poole, Defendant provided Plaintiff Poole with an inaccurate wage statement, in that it failed to include, *inter alia*, her actual hours worked, or a correct weekly pay period.

### FIRST CLAIM FOR RELIEF BY PLAINTIFF WRIGHT AND THOMAS AGAINST DEFENDANTS
#### *Failure to Pay Minimum Wage in Violation of the FLSA*

143.    Plaintiffs Wright and Thomas, and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

144.   29 U.S.C. § 206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked.

145.   As described above, Defendant is an "employer" within the meaning of the FLSA, while Plaintiffs Wright and Thomas and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

146.   As also described above, Defendant did not compensate Plaintiffs Wright and Thomas and FLSA Plaintiffs at the minimum hourly rate required by the FLSA for all hours worked.

147.   Defendant willfully violated the FLSA.

148.   At the least, Plaintiffs Wright and Thomas and FLSA Plaintiffs are entitled to payment at the minimum wage for every hour that they worked for Defendant pursuant to the FLSA's minimum wage provisions.

149.   Plaintiff and FLSA Plaintiffs are entitled to liquidated damages and attorneys' fees for Defendant's violations of the FLSA's minimum wage provisions

**SECOND CLAIM FOR RELIEF BY PLAINTIFF WRIGHT AND THOMAS AGAINST DEFENDANTS**
*Unpaid Overtime under the FLSA*

150.   Plaintiffs Wright and Thomas, and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

151.   29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

152.    As described above, Defendant is an "employer" within the meaning of the FLSA, while Plaintiffs Wright and Thomas and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

153.    Plaintiffs Wright and Thomas and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendant failed to compensate Plaintiffs and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

154.    Defendant willfully violated the FLSA.

155.    Plaintiffs Wright and Thomas and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

156.    Plaintiffs Wright and Thomas and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendant's violations of the FLSA's overtime provisions.

### THIRD CLAIM FOR RELIEF BY PLAINTIFFS WRIGHT AND POOLE
### AGAINST DEFENDANT
*Failure to Pay All Wages on a Timely Basis in Violation of the NYLL*

157.    Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York that opts in to this action, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

158.    NYLL §§ 191(1)(a) requires that employers pay their manual worker employees their wages on a weekly basis.

159.    As described above, Defendant is an "employer" within the meaning of the NYLL, while Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York are manual worker "employees" within the meaning of the NYLL.

160.    As also described above, Defendant failed to pay Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York that opts in to this action, all wages earned on a weekly basis as the NYLL requires.

161.    Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York that opts in to this action, are entitled to any unpaid wages, liquidated damages associated with any missed or late payment, interest, and attorneys' fees for Defendant's violations of the NYLL's requirement to pay all wages to manual workers on a weekly basis.

### FOURTH CLAIM FOR RELIEF BY PLAINTIFFS WRIGHT AND POOLE AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

162.    Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York that opts in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

163.    N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

164.    Defendant is an "employer" within the meaning of the NYLL, while Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York that opts in to this action are "employees" within the meaning of the NYLL.

165.    As described above, Defendant, on each payday, failed to furnish Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York that opts in to this action, with accurate wage statements containing the criteria required under the NYLL.

166.    Specifically, Defendant failed to furnish Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York that opts in to this action with wage

statements on a weekly basis, and that when Defendant did furnish the wage statements, it failed to include, *inter alia*, their actual hours worked or a correct pay period.

167.    Pursuant to NYLL § 198(1-d), Defendant is liable to Plaintiffs Wright and Poole, Rule 23 Plaintiffs, and any FLSA Plaintiffs based in New York that opts in to this action in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00.

## DEMAND FOR A JURY TRIAL

168.    Pursuant to FRCP 38(b), Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a right to trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.    An order restraining Defendant from any retaliation against Plaintiffs, FLSA Plaintiffs, and/or Rule 23 Plaintiffs for participation in any form in this litigation;

d.    Designation of this action as an FLSA collective action on behalf of Plaintiffs Wright and Thomas, and FLSA Plaintiffs, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to

assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

      e.      Certification of the claims brought in this case under the NYLL as a class action pursuant to FRCP 23;

      f.      Designation of Plaintiffs Wright and Thomas and their counsel as collective action representatives under the FLSA;

      g.      Designation of Plaintiffs Wright and Poole and their counsel as class action representatives under the FRCP;

      h.      All damages that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of the Defendant's conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs would have received but for Defendant's unlawful payment practices;

      i.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

      j.      Awarding Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

      k.      Awarding Plaintiffs with a service award for their role as collective and/or class action representatives and in recognition for their dedication to the FLSA Plaintiffs and Rule 23 Plaintiffs and their willingness to come forward as the lead Plaintiffs on behalf of the FLSA Plaintiffs and Rule 23 Plaintiffs;

      l.      Pre-judgment and post-judgment interest, as provided by law; and

m.      Granting Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs such other and further

relief as this Court finds necessary and proper.

Dated: New York, New York
       February 18, 2022

                                        Respectfully submitted,

                                        **JOSEPH & NORINSBERG, LLC**

                          By:   _____

                                        JON L. NORINSBERG
                                        MICHAEL R. MINKOFF
                                        110 East 59th Street, Suite 3200
                                        New York, New York 10022
                                        Tel.: (212) 227-5700
                                        Fax: (212) 656-1889
                                        *Attorneys for Plaintiffs, Putative Collective,*
                                        *and Putative Class*