UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAQUASIA WRIGHT, ERIKA THOMAS,
and CHERIE POOLE, *on behalf of themselves
and others*,

                            Plaintiffs,

              -against-

SKYWEST AIRLINES, INC.,

                          Defendant.
-----------------------------------------------------------X

**ORDER**
22 CV 914 (EK) (CLP)

**POLLAK**, United States Magistrate Judge:

On February 18, 2022, plaintiffs Daquasia Wright, Erika Thomas, and Cherie Poole (collectively, "plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly situated, commenced this action against defendant Skywest Airlines, Inc. ("Skywest"), alleging violations of the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a); the overtime provisions of the FLSA, 29 U.S.C. § 207(a); the New York Labor Law's ("NYLL") requirement that employers pay manual worker employees all wages owed on a weekly basis, N.Y. Lab. Law § 191(1)(a); and the NYLL's requirement that employers furnish employees with wage statements, N.Y. Lab. Law § 195(3), as codified in the Wage Theft Prevention Act ("WTPA"). (Compl.).[1] On March 21, 2025, the district court granted defendant's motion to dismiss the FLSA overtime claims, and denied any motion to amend. (ECF No. 37).

Currently pending before this Court on referral from the district judge is plaintiffs' motion for certification of an FLSA collective action. (ECF No. 47).

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, filed on February 18, 2022. (ECF No. 1).

1

BACKGROUND

According to the Complaint, defendant Skywest owns and operates an airline that provides transportation services to passengers throughout the United States. (Compl. ¶ 2). Plaintiffs allege that they are employees, working as flight attendants, who were required to undergo a thirty (30) day training program, in which they worked over 350 hours, with only two days off. (Id. ¶¶ 3, 4). For this time, they were purportedly paid $18.13 per hour, but, according to plaintiffs, they were only paid for approximately 64 hours in total. (Id. ¶¶ 4, 5). This resulted in an effective hourly pay rate of $3.00 per hour. (Id. ¶ 5). Plaintiffs allege that defendants willfully failed to pay plaintiffs and their other trainees (collectively, "Trainees") the federal minimum wage rate and by failing to pay any overtime compensation throughout their training period, despite the hours worked in excess of 40 in a given week. (Id. ¶¶ 6, 7).

Plaintiffs Wright and Poole also allege that they worked for defendants as reserve flight attendants, required to perform manual labor and physical tasks. (Id. ¶¶ 9, 10). Instead of being paid weekly, defendants paid them twice a month in violation of NYLL § 191(1)(a). (Id.)

On October 20, 2022, defendant filed a partial motion to dismiss Wright and Thomas's FLSA overtime claims arguing that they are exempt from the FLSA's overtime provisions. (ECF No. 27). Defendant also sought to dismiss Wright and Poole's NYLL § 191 claims for failure to allege any concrete harm, arguing that in the absence of such allegations, plaintiffs lack standing pursuant to Fed. R. Civ. P. 12(b)(1). (ECF No. 27).

On March 21, 2025, the district court granted defendant's motion to dismiss the FLSA overtime claims, and denied any motion to amend. (ECF No. 37). After further briefing, the court issued a separate order on June 6, 2025, dismissing plaintiffs' wage statement claims. (ECF No. 43). On August 1, 2025, plaintiffs filed the instant motion to certify an FLSA collective action for their remaining FLSA minimum wage claims (ECF No. 47), which motion was

referred to the undersigned on November 12, 2025. (Order, dated Nov. 12, 2025).[2] Defendant filed a response in opposition to the motion on August 22, 2025, and plaintiffs filed a reply on September 5, 2025. (ECF Nos. 48, 50).

DISCUSSION

I. Legal Standard[3]

Under the FLSA, employers are required to compensate covered employees for all work performed, including overtime, in order to prevent "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §§ 202(a), 207(a)(1); see also Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 522 (S.D.N.Y. 2015) (explaining that "[t]he purpose of the FLSA . . . was to guarantee compensation for all work or employment engaged in by employees covered by the Act" (quoting Reich v. New York City Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995))). Pursuant to Section 216(b) of the FLSA, an employee may bring a collective action "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Relatedly, the FLSA creates a "*right* of any employee to become a party plaintiff to any [FLSA] action, so long as certain preconditions are met." Aboah v. Fairfield Healthcare Servs., Inc., No. 20 CV 763, 2021 WL 6337748, at *5 (D. Conn. Jan. 12, 2021) (quoting Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 515 (2d Cir. 2020)); see also 29 U.S.C. § 216(b).

---

[2] By letter dated November 14, 2025, the parties submitted a joint status report asking that the Court stay all remaining discovery obligations pending the decision on the motion for conditional certification. (ECF No. 52). The Court granted that request on November 17, 2025. (Order, dated Nov. 17, 2025). On November 21, 2025, plaintiffs' counsel, Robert Kansao, Esq. moved to withdraw from further representation of the plaintiffs, noting that he was no longer associated with the firm of Joseph & Norinsberg, LLC, but that the firm would continue to represent plaintiffs going forward. (ECF No. 53). The Court granted Mr. Kansao's motion to withdraw on December 23, 2025. (Order, dated December 23, 2025).

[3] Caselaw quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes unless otherwise noted.

3

Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, a collective action brought under the FLSA may only include those employees who affirmatively "opt in" by giving consent in writing to become a party to the action. Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005); see also 29 U.S.C. § 216(b) (requiring anyone who wishes to join the collective to "give[] [their] consent in writing to become . . . a party" and "file[]" that consent "in the court in which [the] action is brought"); Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010) (noting that, "[u]nlike in traditional class actions . . . , plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment"). Moreover, while Rule 23 imposes a set of detailed procedures for bringing and certifying a class action, conditional certification in the FLSA collective action context serves primarily as a tool for facilitating notice, and the central issue is whether members of the putative collective are "similarly situated" to the named plaintiff "with respect to whether a FLSA violation has occurred," such that those individuals may opt in to the litigation. Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343, 346 (E.D.N.Y. 2015) (citation omitted); see also Myers v. Hertz Corp., 624 F.3d at 544-45, 555 n.10 (noting Section 216(b)'s lack of rigorous procedural requirements and that "certification is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful case management tool for district courts to employ in appropriate cases").

Courts in this Circuit use a two-step analysis to determine whether certification of a collective action under the FLSA is appropriate. See Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (stating that the "[c]ourts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action" (citing Myers v. Hertz Corp., 624 F.3d at 544-45)). At the first step, the named plaintiff moves to

4

conditionally certify the collective, and the district court must determine whether any "similarly situated" potential plaintiffs ought to receive notice of the litigation.  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 515.  If conditional certification is granted, notice is sent to potentially similarly situated employees, who may "opt into the case and become plaintiffs" by filing written consent on the docket.  Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d 271, 277 (E.D.N.Y. 2020) (citing 29 U.S.C. § 216(b)); accord Douglas v. Allied Universal Sec. Servs., 371 F. Supp. 3d 78, 85 (E.D.N.Y. 2019) (citing 29 U.S.C. § 216(b)).  Although the statute has no specific provision for issuing such notice, the Supreme Court in Hoffman-LaRoche Inc. v. Sperling held that it was appropriate for courts to do so under the FLSA in order to serve the "broad remedial goal" of the Act.  493 U.S. 165, 171-74 (1989); see also Sosa v. Caz-59 Express, Inc., No. 13 CV 4826, 2014 WL 5471256, at *2 (E.D.N.Y. May 28, 2014) (explaining that a district court "has the power to order that notice be given to other potential members of the plaintiff class under the 'opt-in' provision of the FLSA" (citation omitted)), report and recommendation adopted by, 2014 WL 5471456 (E.D.N.Y. Oct. 28, 2014).

As the Second Circuit recently explained, "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs . . . share a similar issue of law or fact material to the disposition of their FLSA claims."  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 516.  The "similarly situated" inquiry "is quite distinct from the . . . much higher threshold of demonstrating that common questions of law and fact will predominate for Rule 23 purposes."  Myers v. Hertz Corp., 624 F.3d at 556.  Thus, at step one, the plaintiff need only "make a modest factual showing that they and others together were victims of a common policy or plan that violated the law."  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 515 (quoting Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2016)); see also Valerio v. RNC Indus., LLC, 314

5

F.R.D. at 66 (stating that at the initial certification stage, courts require the existence of a "factual nexus . . . between the plaintiff's situation and the situation of other potential plaintiffs" (quoting Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007))).

Plaintiffs may satisfy this burden by relying on "their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d at 346 (quoting Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013)); see also Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 452-53 (E.D.N.Y. 2014) (citing cases in which conditional certification was granted on the basis of an employee's factual assertions). At the conditional certification stage, the merits of the plaintiff's claim are not at issue, Larouque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008), and the court does not resolve factual disputes or make credibility determinations. Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d at 347 (collecting cases). If plaintiffs meet this "fairly lenient standard," the court will typically grant "conditional certification" and authorize notice to potential opt-in plaintiffs. Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (citation omitted); see also Alvarez v. IBM Rests. Inc., 839 F. Supp. 2d 580, 584 (E.D.N.Y. 2012).

The second step of the court's analysis takes place after discovery, when the court looks at a fuller record and "makes a factual finding regarding the similarly situated requirement; if the claimants are similarly situated, the collective action proceeds to trial, but if they are not, the [collective] is decertified." Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 100 (E.D.N.Y. 2014) (quoting Kalloo v. Unlimited Mech. Co. of NY, Inc., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2014)); see also Myers v. Hertz Corp., 624 F.3d at 555; Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d at 277-78 (detailing the two-step certification process and

6

collecting cases wherein the collective was decertified at step two). The final certification process can occur either as a result of motion practice or during the court's review of a proposed collective settlement. Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d at 277-78 (collecting cases).

II. Analysis

Plaintiffs ask the Court to certify a class of all current and former flight attendants employed by defendant, who during the applicable FLSA limitations period, underwent defendant's training program for new hires ("Covered Employees"). (Pls.' Mem.[4] at 5).

To satisfy the "similarly situated" requirement, plaintiffs need only demonstrate the likely existence of employees who "share a similar issue of law or fact material to the disposition of their FLSA claims" with the named plaintiffs. Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 516. As noted above, this requires only a modest factual showing at the conditional certification stage, and plaintiffs may meet their burden by relying on "their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d at 346. As set forth below, the Court finds that plaintiffs here have satisfied the minimal requirements to warrant conditional certification of a collective action, defined as such, and that distribution of notice to the potential members of the collective is warranted.

First, the Complaint alleges that plaintiffs were subject to a common policy or practice wherein all Covered Employees were required to undergo training at the same facility in Salt Lake City, Utah. (Compl. ¶¶ 4, 25-30; Wright Decl. ¶¶ 6, 24; Thomas Decl. ¶¶ 6, 24).

---

[4] Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Collective Conditional Certification, Disclosure of Contact Information, Leave to Distribute Notice, and Equitable Tolling Pursuant to 29 U.S.C. § 216(b). (ECF No. 47-1).

7

According to plaintiffs, "new training groups arrived for each subsequent week" the plaintiffs spent at the Utah facility, and they state that they all underwent the same training, working the same or substantially the same hours as plaintiffs. (Wright Decl. ¶ 25; Thomas Decl. ¶ 25). Among other details provided by plaintiffs, Wright and Thomas state that each training day began anywhere from 5:00 a.m. to 8:00 a.m., ending on a daily basis between 3:00 p.m. and 6:00 p.m. (Wright Decl. ¶¶ 21-22; Thomas Decl. ¶¶ 21-22). Plaintiffs Wright and Thomas also attest to the same types of training received by all trainees in the Covered Employee group, as well as the same testing requirements, and days off. (Wright Decl. ¶¶ 8, 14, 19; Thomas Decl. ¶¶ 8, 14, 19).

In addition to the Declarations of Wright and Thomas, plaintiffs have named an additional 30 Covered Employees who plaintiffs claim experienced the same violations as plaintiffs. (Pls.' Mem. at 11; Wright Decl. ¶ 27; Thomas Decl. ¶ 27). They have also submitted pay records to substantiate their assertions. (Pls.' Mem. at 11). For purposes of the "lenient standard" applicable at the conditional certification stage, Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. at 367, these factual averments suffice to establish that other individuals employed by defendants during the relevant time period "were victims of a common policy or plan that violated the law." Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 515 (citation omitted). Nothing more is required at this time in order for plaintiffs to satisfy their minimal burden.

III.   Defendant's Opposition

Indeed, in opposing plaintiffs' motion for conditional certification, defendant does not appear to challenge the plaintiffs' assertion that there are similarly situated individuals sufficient to satisfy the requirement for collective action certification. Instead, defendant raises several other issues.

A.  Plaintiffs Were Not Employees

Defendant first argues that plaintiffs' claims fail because flight attendant trainees are not "employees" during the training period, and therefore, they were not entitled to any pay under the law. (Def.'s Mem.[5] at 6 (citing Otico v. Hawaiian Airlines, Inc., 229 F. Supp. 3d 1047, 1051 (N.D. Cal. 2017) (holding that "the trainees receive the benefit of learning how to do a job they hope to get"); Ulrich v. Alaska Airlines, Inc., No. C07-1215RSM, 2009 WL 364056, a *7 (W.D. Wash. Feb. 9, 2009) (finding flight attendant training program was not compensable "work" under the FLSA))).

Defendant argues that the training program was required by federal law and a prerequisite to plaintiffs becoming certified flight attendants eligible to work for defendant or any other airline. (Id. at 6). Since plaintiffs were the primary beneficiaries of the training program, defendant argues that their claim for unpaid minimum wages for time spent in training fails as a matter of law. (Id. at 7 (citing Velarde v. GW GJ Inc., 914 F.3d 779, 785 (2d Cir. 2019) (applying the "primary beneficiary test" to determine whether the plaintiff was a student or an employee for FLSA purposes); Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 538 (2d Cir. 2016) (same, for plaintiff intern))).

In reply, plaintiffs contend that the Court should disregard defendant's argument because it raises an issue of fact for which defendant has failed to provide any evidentiary support. (Pls.' Reply[6] at 1). Plaintiffs contend that their declarations state that they were hired as "employees" to engage in the training program, and their paystubs provided by defendant show that defendant

---

[5] Citations to "Def.'s Mem." refer to Defendant Skywest Airlines, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Collective Conditional Certification, Disclosure of Contact Information, Leave to Distribute Notice, and Equitable Tolling Pursuant to 29 U.S.C. § 216(b). (ECF No. 48).

[6] Citations to "Pls.' Reply" refer to Plaintiffs' Reply in Support of Motion for Conditional Certification, Disclosure of Contact Information, Leave to Distribute Notice, and Equitable Tolling Pursuant to 29 U.S.C. § 216(b). (ECF No. 50).

9

held itself out to be their employer in the training period. (Id.) By contrast, plaintiffs note that defendant failed to provide any documentary evidence of a policy stating that trainees were not employees, nor has it submitted an affidavit attesting to such a practice. (Id.)

Given that there has been no discovery on the issue and the defendant has submitted nothing apart from counsel's argument to support its position, the Court finds that there is a factual question as to whether plaintiffs were or were not exempt from coverage under the NYLL during their training period. As noted *supra*, at this stage of the proceedings, the court does not resolve factual disputes or make credibility determinations, Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d at 347, and the merits of the plaintiff's claim are not at issue. See Larouque v. Domino's Pizza, LLC, 557 F. Supp. 2d at 354. Thus, this factual question is not sufficient to warrant denial of a motion for collective action certification on the merits at this time. If later it is determined that some or all of the plaintiffs were exempt from coverage, the action can be decertified. See Puglisi v. TD Bank, N.A., 998 F. Supp. 2d at 100.

B.   The Court Lacks Personal Jurisdiction Over the Opt-ins

Defendant also argues that the court lacks personal jurisdiction over the claims of potential opt-ins because, under Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty. ("Bristol-Myers"), for every person bringing a claim, including each and every opt-in plaintiff, there must be a showing that the court has personal jurisdiction over the defendant with respect to every claim. (Def.' Mem.[7] at 1, 7-8 (citing 582 U.S. 255 (2017))). Acknowledging that the Second Circuit has not ruled on this issue in the context of collective actions under the FLSA, defendant relies on cases from the Third, Sixth, Seventh, Eighth, and

---

[7] Citations to "Def.'s Mem." refer to Defendant Skywest Airlines, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Collective Conditional Certification, Disclosure of Contact Information, Leave to Distribute Notice, and Equitable Tolling Pursuant to 29 U.S.C. § 216(b). (ECF No. 48).

10

Ninth Circuits in asking this Court to find that the reasoning of Bristol-Myers should apply in this case. (Id. at 1 (citing cases)).

Defendant argues that since SkyWest is a Utah corporation and not "at home" in New York, the Court lacks general jurisdiction over SkyWest as to any future opt-ins' claims under the FLSA. (Id. at 7). Defendant argues that for a New York court to exercise "specific jurisdiction," there must be a showing that defendant transacts business in New York and that the cause of action arises from such business connection. (Id. at 8 (citing Pettenato v. Beacon Health Options, Inc., 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019)). Quoting Bristol-Myers, defendant argues that in or order to have specific jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." 582 U.S. at 262 (citation omitted).

Although Bristol-Myers did not involve an FLSA collective action, defendant cites several cases where other circuit courts have held that "the reasoning of Bristol-Myers applies in FLSA collective actions." See, e.g., Harrington v. Cracker Barrel Old Country Store, Inc., 142 F.4th 678, 687 (9th Cir. 2025) (holding that under Bristol-Myers, "[p]ersonal jurisdiction must exist for each claim asserted against a defendant" including opt-ins); Vanegas v. Signet Builders, Inc., 113 F.4th 718, 724 (7th Cir. 2024) (holding that Bristol-Myers requires a "claim-by-claim" analysis of personal jurisdiction in the FLSA context); Fischer v. Fed. Express Corp., 42 F.4th 366, 370 (3d Cir. 2022) (holding that where the basis for personal jurisdiction is specific personal jurisdiction in an FLSA action, every plaintiff who seeks to opt in must demonstrate that their claim arises out of or relates to defendant's minimum contacts with the forum); Canaday v. Anthem Cos., Inc., 9 F.4th 392, 397 (6th Cir. 2021) (same); Vallone v. CJS Sols.

11

Grp., LLC, 9 F.4th 861, 865 (8th Cir. 2021) (same).  However, as defendant notes, the First Circuit has declined to extend Bristol-Myers's personal jurisdiction requirements to FLSA collective actions in federal court.  Waters v. Day & Zimmermann NPS, Inc., 23 F.4th 84, 97 (1st Cir. 2022).

According to defendant, the issue is currently pending before the Second Circuit in Provencher v. Bimbo Bakeries USA, Inc., Case No. 24-3112.  (Def.'s Mem. at 9).  Given that defendant contends that plaintiffs' claims are based entirely on conduct occurring in the state of Utah and not New York, defendants argue that the Court lacks specific personal jurisdiction over any putative opt-in.  (Id. at 10).

In their Reply, plaintiffs argue that it is well-established that a defendant must raise the defense of lack of personal jurisdiction at the earliest possible opportunity or the defense is waived.  (Pls.' Reply at 10 (citing American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1106 (9th Cir. 2000))); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 134 (2d Cir. 2011) (citing Fed. R. Civ. P. 12(h)).  Plaintiffs argue that the litigation began when the Complaint was filed on February 18, 2022; defendant filed its pre-motion letter to dismiss on May 23, 2022, as well as a supplemental letter on June 29, 2022.  (Id. at 10-11 (citing ECF Nos. 15, 20)).  Defendant never raised the issue of lack of personal jurisdiction in either of these letters, nor was it raised in the pre-motion conference on September 20, 2022, in the motion to dismiss filed on October 20, 2022, nor during oral argument on September 19, 2023.  (Id. at 11 (citing ECF Nos. 23, 27, 34)).  Even as recently as the defendant's response to an Order to show cause filed on April 16, 2025, there was no mention of this personal jurisdictional defense.  (Id. (citing ECF No. 40)).

Defendant's only explanation for not raising it before now is that "'[a] defendant cannot waive the defense as to putative opt-in plaintiffs that have not yet consented to become a party to the action.'" (Id. (quoting Def.'s Mem. at 17)). In response to that argument, plaintiffs note that the cases relied upon by defendant that allowed the defense of personal jurisdiction to be raised at the collective certification stage did not involve named plaintiffs that were foreign, as opposed to the instant case where plaintiffs are in fact foreign plaintiffs. (Id. at 12 (citing Kurtz v. RegionalCare Hosp. Partners, Inc., No. 19 CV 5049, 2021 WL 6246619, at *3 (E.D. Wash. Sept. 9, 2021))).

Even if the Court were to find that defendant had not waived the defense of personal jurisdiction, plaintiffs argue that this Court should follow the reasoning of the First Circuit in Waters v. Day & Zimmermann NPS, Inc., 23 F.4th at 97. To adopt the rule that is urged by defendant would "'splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights.'" (Id. at 13 (quoting Mason v. Lumber Liquidators, Inc., No. 17 CV 4780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019))).

Although plaintiffs have raised a question as to whether defendant's delay in raising the personal jurisdiction defense constitutes a waiver of that defense, the Court determines that it need not reach the issue of waiver at this time. Rather, given that the Second Circuit is currently considering the issue of whether the principles of personal jurisdiction announced in Bristol-Myers apply to collective actions brought under the FLSA, the plaintiffs' motion for collective action certification is denied without prejudice. See Provencher v. Bimbo Bakeries USA, Inc., Case No. 24-3112 (2d Cir.). At this juncture, when the law in the Second Circuit is unclear,

delaying a determination on certification may ultimately result in a significant cost saving to both parties.

## CONCLUSION

In conclusion, the Court denies plaintiffs' motion for certification of an FLSA collective action without prejudice to renew. The parties are instructed to file a joint status report in 90 days, or when the Second Circuit has issued a decision in Provencher v. Bimbo Bakeries USA, Inc., Case No. 24-3112, whichever is sooner.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
December 30, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York